**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Jane Doe, | Case No. 2:25-cv-03350-MRP |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants | |

**ORDER**

**AND NOW,** this _____ day of _____, 2025, after consideration of Defendant Villanova University's Motion to Dismiss Plaintiff's First Amended Complaint With Prejudice, and any response thereto, it is **ORDERED** that the Motion is **GRANTED.** The First Amended Complaint is **DISMISSED WITH PREJUDICE** as to Defendant Villanova University.

**BY THE COURT:**

_____
Hon. Mia Roberts Perez

56109692.3

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Jane Doe, | Case No. 2:25-cv-03350-MRP |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants | |

## DEFENDANT VILLANOVA UNIVERSITY'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE

For the reasons set forth in the Memorandum of Law filed concurrently with this Motion, Defendant Villanova University moves to dismiss with prejudice Plaintiff Jane Doe's First Amended Complaint as to Defendant Villanova University pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

/s/ James A. Keller
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

Date: September 4, 2025

56109692.3

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Jane Doe, | Case No. 2:25-cv-03350-MRP |
| Plaintiff, | |
| v. | |
| Villanova University, et al., | Electronically Filed |
| Defendants | |

**DEFENDANT VILLANOVA UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF ALLEGED FACTS ................................................................................ 2

QUESTION PRESENTED .................................................................................................. 4

ARGUMENT ....................................................................................................................... 4

    A.    Plaintiff Fails To State A Claim for Negligence Against The University (Count I) Because The University Owed Her No Duty, And Did Not Cause Her Any Damages ............. 5

        1.    Villanova Owed No Duty To Plaintiff As A Student, Invitee, Or "Tenant" ................ 5

        2.    Villanova Was Not The Proximate or Legal Cause Of Plaintiff's Damages ............ 13

    B.    Plaintiff Fails To State A Claim For NIED Against The University (Count II) Because Plaintiff Has Not Adequately Stated An Underlying Claim Of Negligence, And Her Accompanying Demand for Punitive Damages Must Fail ...................................................... 17

    C.    The FAC Should Be Dismissed With Prejudice Because Amendment Would Be Futile. 19

CONCLUSION .................................................................................................................... 21

56109692.3

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................5

*Bradshaw v. Rawlings*, 612 F.2d 135 (3d Cir. 1979) .....................................................7

*Byers v. Intuit, Inc.*, 600 F.3d 286 (3d Cir. 2010) .........................................................4

*Doe v. Brown Univ.*, 304 F.Supp.3d 252 (D.R.I. Jan. 16, 2018) ...................................11

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) ..............................................................1

*Doe v. Moravian Coll.*, No. 5:20-CV-00377, 2023 WL 144436 (E.D. Pa. Jan. 10, 2023)............12

*Doherty v. Emerson Coll.*, No. 1:14-CV-13281-LTS, 2017 WL 4364406 (Sept. 29, 2017)........17

*Estate of Puza v. Carbon Cty.*, 586 F. Supp. 2d 271 (M.D. Pa. 2007), *aff'd sub nom. Baker-Puza v. Carbon Cty.*, 304 F. App'x 47 (3d Cir. 2008)........................................................7

*Facchetti v. Bridgewater Coll.,* 175 F.Supp.3d 627 (W.D. Va. 2016) ...........................17

*Fitzpatrick v. Universal Tech. Inst. Inc.,* No. 08-1137, 2010 WL 3239173 (E.D. Pa. Aug. 11, 2010) ...................................................................................................................8

*Freeman v. Busch*, 150 F.Supp.2d 995 (S.D. Iowa Mar. 5, 2001)................................14

*Hall v. U.S.,* No. 2:19-cv-05256, 2020 WL 3265146 (E.D. Pa. June 17, 2020) ........................................................................................................................20

*Haque v. Swarthmore Coll.,* No. 15-CV-1355, 2016 WL 11812329 (E.D. Pa. Feb. 3, 2016) ......11

*Heller v. Consol. Rail Corp.*, 576 F. Supp. 6 (E.D. Pa. 1982)........................................7

*Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Tex. 2017)............................16

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454 (E.D. Pa. 2014) ...........................18

*In re New Jersey Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012)................................5, 19

*James v. Duquesne Univ.*, 936 F. Supp. 2d 618 (W.D. Pa. 2013) ...........................8, 12

*Johnson v. Goldstein*, 864 F. Supp. 490 (E.D. Pa. 1994) ............................................12

*Johnson v. OYR Realty Partners LP*, No. 14-CV-4630, 2015 WL 7733544 (E.D. Pa. Dec. 1, 2021) ........................................................................................................................12

*Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993) ........................................8

*Leidy v. Borough of Glenolden,* 277 F. Supp. 2d 547 (E.D. Pa. 2003) ..............................6

*McLaughlin v. Bayer Corp.*, 172 F.Supp.3d 804 (E.D. Pa. 2016) .....................................5

*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 (W.D. Pa. 2019) ..........18, 19

*Mohn v. U.S.*, No. 23-2653, 2023 WL 8458243 (E.D. Pa. Dec. 6, 2023) ...........................20

*Murrell v. Mount St. Clare Coll.*, No. 3:00-CV-90204, 2001 WL 1678766 (S.D. Iowa Sept. 10, 2001) ........................................................................................................................17

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224 (3d Cir. 2008) ............................................19

*Read v. Sam's Club, et al.,* No. 2:05-CV-00170, 2005 WL 2346112 (E.D. Pa. Sept. 23, 2005) ..10

*Smith v. Lincoln Ben. Life Co.,* 395 F.App'x 821 (3d Cir. Sept. 24, 2010) .......................20

*Sullivan v. Warminster Tp.,* 765 F. Supp. 2d 687 (E.D. Pa. 2011) ..................................14

STATE CASES

*Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1981) ...............................19

*Baumbach v. Lafayette Coll.*, 272 A.3d 83 (Pa. Super. Ct. 2022) ..................................8, 9

*Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36 (Pa. Super. Ct. 2000) .................18

*Cooper v. Frankford Health Care Sys., Inc.*, 960 A.2d 134 (Pa. Super. Ct. 2008) ...........7

*Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243 (Pa. Super. Ct. 1983) ......................19

*Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571 (Pa. Super. Ct. 1999) ........18

*Dudley v. USX Corp.*, 606 A.2d 916 (Pa. Super. Ct. 1992) ............................................13

*F.D.P. v. Ferrara*, 804 A.2d 1221 (Pa. Super. Ct. 2002) ..............................................6

*Feeney v. Disston Manor Personal Care Home, Inc.*, 849 A.2d 590 (Pa. Super. Ct. 2004) ........15

*Feld v. Merriam*, 506 Pa. 383 (1984) .....................................................................11, 12

*Feleccia v. Lackawanna Coll.*, 215 A.3d 3 (Pa. 2019) ...................................................8

*Ferencz v. Milie*, 535 A.2d 59 (Pa. 1987) ..................................................................11

56109692.3

*Herr v. Booten,* 580 A.2d 1115 (Pa. Super. Ct. 1990) .................................................. 11

*Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998) ............................................................... 19

*J.E.J. v. Tri-County Big Brothers/Big Sisters, Inc.*, 692 A.2d 582 (Pa. Super. Ct. 1997) ............ 19

*Leoni v. Reinhard,* 194 A. 490 (Pa. 1937) .............................................................. 15

*Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281 (Pa. Super. Ct. 2005) ............................ 13

*Martin v. Johns-Manville Corp.*, 494 A.2d 1088 (Pa. 1985) ............................................. 19

*Millard v. Osborne,* 611 A.2d 715 (Pa. Super. Ct. 1992) ............................................... 8

*Moran v. Valley Forge Drive-In Theater, Inc.*, 431 Pa. 432 (1968) ................................. 8, 10

*Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) ........................................................ 19

*Pietrulewicz v. Gil*, No. 2014-C-0826, 2014 WL 11226404 (Pa. Ct. Com. Pl. June 6, 2014) ...... 19

*Regents of Univ. of California v. Superior Court*, 413 P.3d 656 (Cal. 2018) .......................... 14

*Reider v. Martin*, 359 Pa. Super. 586, 519 A.2d 510 (1987) ........................................... 12

*Reilly v. Tiergarten, Inc.*, 633 A.3d 208 (Pa. Super. Ct. 1993) ...................................... 13

*Roe v. Northeastern Univ.,* No. 16-03335-C, 2019 WL 1141291 (Sup. Ct. Mass. Mar. 8, 2019) 14

*Seebold v. Prison Health Servs., Inc.*, 618 Pa. 632 (2012) ............................................ 6

*Swift v. Northeastern Hosp. of Pa.*, 690 A.2d 719 (Pa. Super. Ct. 1997) .............................. 9

*Swisher v. Pitz*, 868 A.2d 1228 (Pa. Super. Ct. 2005) ................................................. 19

*T.A. v. Allen*, 669 A.2d 360 (Pa. Super. Ct. 1995) .................................................... 6

*Tanja H. v. Regents of Univ. of California*, 228 Cal. App. 3d 434 (Cal. Ct. App. 1991) ........ 14, 17

*Trude v. Martin*, 660 A.2d 626 (Pa. Super. Ct. 1995) ................................................. 15

*Von der Heide v. Com., Dep't of Transp.*, 18 A.2d 286 (Pa. 1998) ................................ 14, 15

*Wittrien v. Burkholder*, 965 A.2d 1229 (Pa. Super. Ct. 2009) .......................................... 5

**STATE STATUTES**

Pennsylvania's Landlord Tenant Act ..................................................................... 11

**FEDERAL RULES**

Rule 10(a).........................................................................................................................1

Rule 12(b)(6)............................................................................................................4, 5, 21

**OTHER AUTHORITIES**

Restatement of Torts..........................................................................................................5, 6

Restatement (Second) of Torts § 314...................................................................................7

Restatement (Second) of Torts § 344...............................................................................8, 10

Restatement (Second) of Torts § 442B.............................................................................15

**INTRODUCTION**

The claims of Plaintiff Jane Doe ("Plaintiff")[1] against Defendant Villanova University ("Villanova" or "University") arise from a sexual assault allegedly committed against Plaintiff, a former Villanova student, by another Villanova student, Colin Cummings ("Cummings"). The alleged incident occurred after Plaintiff, under the age of 21, apparently became intoxicated at College Hall Apartments ("The Courts"), an off-campus apartment building owned by Defendants College Hall Associates L.P. and College Hall G.P. and managed by Defendant Marks & Co. USA, Inc. Plaintiff avers that after she left The Courts, she consumed more alcohol with Cummings and others in an outdoor area of campus, where the alleged assault then occurred in a wooded area.

If true, the accusations against Cummings are appalling. Missing, though, is a basis to hold the University responsible. A university does not have a duty to – and indeed cannot – act as a guarantor for the safety of students at off-campus premises which are outside its supervisory authority, nor be responsible for the unforeseeable, independent criminal actions of its students, on- or off-campus. Because Plaintiff cannot show that the University breached any duty to her, or was the cause of harm that befell her, she fails to state a claim for Negligence (Count I) as a matter of law. Because Plaintiff cannot sustain a claim for Negligence, she fails to state a claim for Negligent Infliction of Emotional Distress ("NIED") (Count II) as a matter of law. As such, the First Amended Complaint should be dismissed against the University in its entirety, with prejudice.

**PROCEDURAL HISTORY**

---

[1] Rule 10(a) requires a complaint to "name **all** the parties" (emphasis added). "Identifying parties to [a] proceeding is an important dimension of publicness." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). Plaintiff has not properly requested relief from Rule 10 prior to proceeding with the use of a pseudonym. For the purposes of this motion only, the University will refer to Plaintiff using a pseudonym. In doing so, the University does not concede that Plaintiff has properly sought to deviate from the requirements of Rule 10; waive its right to contest use of a pseudonym; or suggest that Plaintiff could demonstrate the "exceptional" circumstances required for such relief. *Id.*

1

Plaintiff filed a "Civil Action Complaint" in the Court of Common Pleas of Philadelphia County, Pennsylvania on June 26, 2025. Doc. 1, Ex. A. On June 27, 2025, the University filed a Notice of Removal. Doc. 1. On August 11, 2025, the University filed a Motion to Dismiss. Doc. 14. On August 22, 2025, Plaintiff filed her First Amended Complaint ("FAC"). Doc. 19.

## STATEMENT OF ALLEGED FACTS

In August 2023, Plaintiff started her freshman year at Villanova, residing on-campus in Stanford Hall. FAC ¶¶ 20-22. Plaintiff avers that Villanova did not provide "adequate instruction or guidance regarding on- or off-campus alcohol and/or drug use and/or abuse" to freshmen, or "any instruction or guidance regarding sexual abuse and/or misconduct," including at freshman orientation, specific to The Courts or otherwise, *id.* ¶¶ 23-29,[2] other than that Plaintiff's orientation group leader told her not to drink "jungle juice" at The Courts. *Id.* ¶¶ 30-32. Plaintiff avers that the evening following the first day of classes (that year, August 23) was known as "sylly night." *Id.* ¶¶ 34, 36. "Sylly night" is alleged to be the first night of "sylly week," a time when "students review their course syllabi with their professors" and have "nightly parties on- and off-campus." *Id.* ¶¶ 35-36. Plaintiff avers that during "sylly week," students, "including underaged students, attend parties [and] drink alcohol served to them by other students, some of legal age, others not of legal age, causing them to become intoxicated and act in an irrational manner." *Id.* ¶ 37.

Plaintiff avers that "a large percentage of Villanova students, including underaged students, attend 'sylly week' parties at The Courts," and she attended a party at The Courts on August 25,

---

[2] The University disagrees with and disputes many of the allegations set forth in the FAC, including the mischaracterization of its robust education and prevention programs pertaining to alcohol, drugs, and sexual misconduct, particularly as such efforts are exhaustively detailed in the University's publicly-available Annual Security and Fire Safety Report – a document which Plaintiff herself cites in the FAC, at ¶ 45. Nonetheless, the University acknowledges that the Court must accept any well-pleaded allegations in the FAC as true for the purposes of this motion. This Statement of Alleged Facts is therefore based on the allegations in the FAC.

2023. *Id.* ¶¶ 40-41. Even though she was under 21, Plaintiff avers that she "imbibed alcoholic beverages served to her from within at least one apartment." *Id.* ¶¶ 42-43. Plaintiff says the University did not "send any text or e-mail messages or alerts to its students…to exercise caution or refrain from engaging in on- or off-campus alcohol and/or drug use and/or abuse or sexual abuse and/or misconduct, if they did indeed decide to attend any 'sylly week' activities." *Id.* ¶ 44.

Plaintiff describes The Courts as "home to more than 100 Villanova students on an annual and recurring basis," *id.* ¶ 50, and asserts Villanova was "aware of ongoing student misbehavior" including "underage alcohol consumption" occurring there. *Id.* ¶ 60. Plaintiff avers that she, accompanied by three other female Villanova students, "became highly intoxicated" at The Courts, drinking alcohol which was provided to her for free, although she was underage. *Id.* ¶¶ 74-75, 85-86, 88, 90. Plaintiff does not allege she was unaware that alcohol would be available at The Courts, or that anyone pressured or forced her to drink alcohol, but asserts she was a "victim" of "the crime of selling or furnishing alcohol to minors," and Villanova "knew or should have known" this crime "was occurring at The Courts, especially during 'Sylly Week/Sylly Night.'" *Id.* ¶ 91-92.[3]

Plaintiff avers that she returned to Stanford Hall around midnight, with the three other female students. *Id.* ¶¶ 93-94. Plaintiff, her roommate, and others, including Cummings, gathered outside and consumed more alcohol. *Id.* ¶¶ 95-96. Plaintiff avers they were unobserved by police, campus police, Resident Assistants, or other staff. *Id.* ¶¶ 97-100. Other students returned to their dormitories in the early morning, but Plaintiff and Cummings remained outside, continuing to consume alcohol. *Id.* ¶¶ 102-103. Plaintiff alleges that, in the early morning hours of August 26, 2023, she "blacked out," and Cummings sexually assaulted her in a wooded area, "under the cover

---

[3] Plaintiff notes that "[p]ursuant to 18 Pa.C.S. § 6310.1, providing alcohol to a minor (under 21) is illegal." Per 18 Pa. C.S. § 6308, consuming alcohol while under the age of 21 is also illegal.

of the trees," while she was "incapable of voluntarily [or knowingly] consenting to sexual acts" because of intoxication. *Id.* ¶¶ 104-108. Plaintiff alleges she made a report to a Resident Assistant on or about August 31, 2025, and sometime thereafter, to the Villanova "Title IX office"; Plaintiff says that, despite these reports, Cummings was not subject to discipline or expelled. *Id.* ¶¶ 115-118.[4] Plaintiff states that she also made a police report, but does not describe any responsive action by police. *Id.* ¶ 116. Plaintiff asserts that after these events she drank alcohol "excessively" and "her grades suffered," and she withdrew from the University at the beginning of the next semester. *Id.* ¶¶ 121-122.[5] Plaintiff avers she has a variety of ailments including PTSD, depression, "skin rashes," "disfigurement," and "bodily deformation." *Id.* ¶¶ 124-125.

## QUESTION PRESENTED

*Question:* Should the FAC be dismissed for failure to state a claim on which relief can be granted?

*Suggested Answer: Yes.*

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A complaint must be construed "in the light most favorable to the plaintiff." *Byers v. Intuit, Inc.*, 600

---

[4] Plaintiff does not assert that she filed an internal complaint under the University's applicable policy, which would have prompted the University to undertake an investigation and adjudication.

[5] Plaintiff says this was "Spring 2023," but it is apparent she is referring to Spring 2024.

F.3d 286, 291 (3d Cir. 2010) (citation and quotations omitted). But, "'labels and conclusions'" and "'naked assertion[s]' devoid of 'further factual enhancement'" are not entitled to the presumption of truthfulness. *Iqbal*, 556 U.S. at 678 (citations omitted). If alleged facts fail "to raise a right to relief above the speculative level," the court must dismiss. *Twombly*, 550 U.S. at 555.

As Plaintiff has not stated a viable claim against the University, under Rule 12(b)(6), the FAC should be dismissed against Villanova in its entirety and with prejudice, as amendment would be futile. *See In re New Jersey Title Ins. Litig.*, 683 F.3d 451, 462 (3d Cir. 2012) (court need not permit amendment if complaint is vulnerable to dismissal and amendment would be futile).

A.    Plaintiff Fails To State A Claim for Negligence Against The University (Count I) Because The University Owed Her No Duty, And Did Not Cause Her Any Damages.

1.    Villanova Owed No Duty To Plaintiff As A Student, Invitee, Or "Tenant"

"In any negligence case, the plaintiff must prove duty, breach, causation and damages." *Wittrien v. Burkholder*, 965 A.2d 1229, 1232 (Pa. Super. Ct. 2009).[6] *See also McLaughlin v. Bayer Corp.*, 172 F.Supp.3d 804, 817 (E.D. Pa. 2016). Here, Plaintiff alleges that the University "owed a duty to its students" to provide "a safe educational and residential environment and to protect them from foreseeable harm" because it had a "college-student relationship," a "special relationship," and "a landlord-tenant relationship" with its students. FAC ¶¶ 127-130. Per Plaintiff, these "duties" resemble those "of a possessor of land and a business invitee in accordance with Restatement of Torts (Second)" and impose upon the University the duties to "discover that underage alcohol consumption, drug abuse and sexual abuse and misconduct (including rape) was occurring on- and off-campus" and "give warnings adequate enough to enable its visitors and students, including Jane Doe, to avoid harm or otherwise protect them from harm." *Id.* ¶¶ 131-133.

---

[6] Villanova applies Pennsylvania law, as there is no real dispute that Pennsylvania law applies.

Plaintiff alleges that the University "negligently misrepresented that its campus is a safe and secure environment for its students," an assertion she bases on the fact that the crime statistics the University publishes annually show there is crime on campus.[7] *Id.* ¶ 137. Plaintiff further alleges that the University failed to warn students of obvious dangers such as the risks associated with underage drinking, that sexual assault may occur on a college campus, and that drinking may increase the vulnerability of a person to sexual assault, *id.* ⁋ 138 (a-e, j, n); failed to assert responsibility for the security of The Courts, an off-campus residence over which it has no authority, *id.* ⁋ 138 (f-g); and failed to detect intoxicated students, such as by monitoring all students for signs of intoxication during "sylly week" and conducting unannounced searches for alcohol or drugs. *Id.* ⁋ 138 (h-i, k-m, o).[8]

Plaintiff fundamentally misstates the University's duties to its invitees, students, and residents. "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." *T.A. v. Allen*, 669 A.2d 360, 362 (Pa. Super. Ct. 1995). There is "no duty to control the conduct of a third party to protect another from harm unless there is a special relationship between [the defendant] and the third [party]," or between the defendant and the plaintiff. *F.D.P. v. Ferrara*, 804 A.2d 1221, 1228 (Pa. Super. Ct. 2002) (citing Restatement (Second) of Torts § 315). *See also Leidy v. Borough of Glenolden,* 277 F. Supp. 2d 547 (E.D. Pa. 2003) (same); *Seebold v. Prison Health Servs., Inc.*, 618 Pa. 632, 659 (2012) (citing Restatement (Second) of Torts § 314 for the position that "[t]he fact that the actor realizes or should realize that

---

[7] It is unclear how Villanova may have "misrepresented" campus safety, given its publication of crime statistics. The FAC does not allege that the statistics were inaccurate or incomplete.

[8] Plaintiff, of course, undercuts her own assertions in this regard by noting correctly that the University has both an alcohol policy and a sexual misconduct policy, the latter of which specifically "speaks to the specific dangers of alcohol" including a clear warning that "sexual contact while under the influence of alcohol or other drugs [is] risky behavior." FAC ⁋⁋ 70-72 (emphasis added).

action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action"). Section 314 identifies the following "special relationships" giving rise to a duty to act affirmatively to protect another: a common carrier's duty passengers; an inn-keeper's duty to guests; custodial environments' duty to those in custody (*e.g.,* prisons, hospitals, mental health institutions); or, as noted by Plaintiff, "[a] possessor of land who holds it open to the public" to "members of the public who enter in response to his invitation."[9] None apply here.

> a.    No Special Relationship With Villanova As A Student

The University owed Plaintiff no special duty just because she was a student. Pennsylvania courts have repeatedly refused to find an inherent special relationship between institutions of higher education and their students that imposes a blanket duty of care. *See Bradshaw v. Rawlings*, 612 F.2d 135, 138-40 (3d Cir. 1979) ("Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students....[T]he competing interests of the student and of the institution of higher learning are much different today than they were in the past. At the risk of oversimplification, the change has occurred because society considers the modern college student an adult, not a child of tender years"); *see also Heller v. Consol. Rail Corp*., 576 F. Supp. 6, 13 (E.D. Pa. 1982) (citing *Bradshaw* in declining to find Villanova owed duty of care to student, an "adult fully capable of protecting his own self interests").

---

[9] It does not appear Plaintiff is asserting she was in the University's custody. For the avoidance of doubt, she was not. She was not under its control such that she was "deprive[d]…of h[er] normal opportunities for protection…." *Id. See Cooper v. Frankford Health Care Sys., Inc*., 960 A.2d 134, 147-48 (Pa. Super. Ct. 2008) (custodial environments and therapeutic relationships giving rise to duty); *Estate of Puza v. Carbon Cty*., 586 F. Supp. 2d 271 (M.D. Pa. 2007) (duty of care of mental health institutions and professionals with custodial relationships), *aff'd sub nom*. *Baker-Puza v. Carbon Cty*., 304 F. App'x 47 (3d Cir. 2008). "Custody" giving rise to a special relationship generally involves physical control, as in the case of prisoners, or a voluntary assumption of responsibility to care for or supervise another, as in the case of a doctor-patient relationship. *See Cooper*, 960 A.2d at 147-48.

This is not a new principle; instead, it is well-settled law in Pennsylvania that the relationship between university and student is not, without more, a "special relationship" that imposes a duty to protect students from the intentional and/or criminal acts of a third party.[10]  *See, e.g., James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 646 (W.D. Pa. 2013) ("[A]ny relationship between defendant and plaintiff as university/student did not give rise to a pre-existing duty to protect plaintiff from the spontaneous criminal acts of third persons") (citation omitted); *Fitzpatrick v. Universal Tech. Inst. Inc.,* No. 08-1137, 2010 WL 3239173, at *3 (E.D. Pa. Aug. 11, 2010) ("The general rule in Pennsylvania, regarding the relationship between a college and a student, is that no special relationship exists"); *Millard v. Osborne,* 611 A.2d 715, 721 (Pa. Super. Ct. 1992) ("Clearly, in modern times, it would be inappropriate to impose an *in loco parentis* duty upon a university that renders the university responsible for student safety at all times").

Plaintiff points to no exception to these well-established principles, nor could she.

b.    No Special Relationship With Villanova As An "Invitee"

Plaintiff's putative negligence claim also cannot proceed under a theory of premises liability. Preliminarily, any analysis would not extend to acts or omissions at The Courts, property which is not owned or controlled by Villanova. *See* Restatement (Second) of Torts § 344 (imposing liability on landowners for physical harm to invitees "while they are upon the land"); *Moran v. Valley Forge Drive-In Theater, Inc*., 431 Pa. 432 (1968) (recognizing § 344 in Pennsylvania).

In the FAC, Plaintiff incorporates by reference two documents, a Student Handbook for academic year 2022-2023 and a Code of Conduct for academic year 2025-2026. As neither of these documents was in effect during academic year 2023-2024, the sole academic year of

---

[10] Some cases indicate that institutions may have heightened duties to student-*athletes* whose physical well-being is within their care and control, but these cases are inapplicable here. *See, e.g., Kleinknecht v. Gettysburg Coll*., 989 F.2d 1360 (3d Cir. 1993); *Feleccia v. Lackawanna Coll*., 215 A.3d 3 (Pa. 2019); *Baumbach v. Lafayette Coll.*, 272 A.3d 83 (Pa. Super. Ct. 2022).

Plaintiff's attendance, they are inapplicable and should be disregarded. Nonetheless, Plaintiff cites the Student Handbook for the purposes of noting that the University guarantees on-campus housing to students and requires those who wish to live off-campus during their first or second years to "request permission in writing from the Office for Residence Life." FAC ᴾᴾ 68-69.[11] Extraordinarily, Plaintiff asserts that this, and the fact that University reserves the right under the Code of Conduct to discipline students for "conduct that occurs both on and off the Villanova campus," FAC ᴾ 67, "prove[s] that [Villanova] had a relationship with off-campus housing facilities like The Courts" and "from an operations and oversight perspective, [Villanova] was not likely as independent form [sic] or 'separate and distinct' from The Courts, their property owners[,] and their property manager[.]" FAC ᴾ 73. These assertions defy credulity. The FAC cites *no* facts which connect Villanova to The Courts' "operations and oversight," or any joint venture with its owners or managers. Villanova is no more legally connected to The Courts than it is to any other premises which house Villanova students, or any other area where Villanova students may unfortunately choose to engage in misconduct, in the vicinity or otherwise, and Plaintiff points to no facts or any legal principle which would establish that it is.

Even on campus, Villanova is not an insurer of the safety of those on its premises. *Swift v. Northeastern Hosp. of Pa.*, 690 A.2d 719 (Pa. Super. Ct. 1997). With respect to offenses committed by third parties on the land, the landowner "is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur," although "[i]f the place or character of his business, or his past experience, is such that he

---

[11] Plaintiff disingenuously refers to the ***on-campus housing expectation*** as a "specific polic[y] and procedure[] with respect to off-campus housing, including off-campus application review, off-campus housing approval, and **oversight of off-campus housing.**" *Id.* ᴾ 73. Even if the cited documents were applicable, which they are not, the FAC cites *no* provision suggesting "oversight."

should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it…." *See* Restatement (Second) of Torts § 344 (Comment (f)). Put another way, even if Plaintiff adequately pled having been an "invitee," Villanova's obligations to her were not triggered until it had "actual or constructive knowledge of such [intentional] conduct by third-parties." *Read v. Sam's Club, et al.,* No. 2:05-CV-00170, 2005 WL 2346112, *5 (E.D. Pa. Sept. 23, 2005) (no knowledge where similar incidents (spills) occurred once every two and a half months, in varying locations across the premises, under varying circumstances). *Compare Moran*, 431 Pa. at 435 (knowledge imputed where substantially identical incidents (firecracker explosions) occurred on "approximately twelve occasions each year over the [previous] two year period," including once in the exact location).

There are no facts alleged in the FAC that plausibly plead, or even suggest, the University knew or should have known that Cummings posed a risk of harm to Plaintiff or anyone else. Nor are there any facts alleged in the FAC suggesting that there was any "past experience" of sexual assaults occurring in connection with "sylly week." Plaintiff alleges only, in Paragraph 45 of her FAC, that there were 3 reports of "rape" on campus in 2020, 13 in 2021, and 10 in 2022[12] – information gleaned from Villanova's **public warnings** regarding reported misconduct on campus, including reports of sexual misconduct and liquor law violations. Plaintiff does not provide any information suggesting those reported incidents were of a similar nature to that which allegedly occurred here.[13] "The same sweeping social implications that have made the judiciary

---

[12] This information is derived from Villanova's Annual Security Report prepared pursuant to The Clery Act, a federal law requiring universities to publish information of *all reports* of certain alleged criminal conduct, which materially differs from an arrest or conviction for such conduct.

[13] Villanova has restricted its analysis of the harm that befell Plaintiff to the alleged actions of Cummings. To the extent Plaintiff may be suggesting, albeit unclearly, she was harmed by her consumption of alcohol (*see* FAC ⁋ 141, asserting the University's conduct "was a substantial factor in causing, and did proximately cause, Jane Doe to become highly intoxicated"), where a plaintiff

hesitate to hold universities liable under the special-relationship theory (discussed above) counsel similar caution as to [a] premises-liability theory." *Doe v. Brown Univ.*, 304 F.Supp.3d 252, 261-2 (D.R.I. Jan. 16, 2018) (sexual assault of student after being drugged at fraternity not foreseeable even when "in the span of approximately four years the University charged [the c]hapter with five disciplinary infractions involving unregistered parties and serving alcohol to minors").

Plaintiff has not plausibly pled a "special relationship" based on putative invitee status.

c.     No Special Relationship With Villanova As A "Tenant"

Finally, Plaintiff's claim cannot succeed under a "landlord-tenant" theory. Preliminarily, students residing in dormitories do not have landlord-tenant relationships with their institutions, and Plaintiff has not pled the existence of a lease or other written housing agreement, or any facts whatsoever, to show that there was such a relationship. *See Haque v. Swarthmore Coll.,* No. 15-CV-1355, 2016 WL 11812329, *15 (E.D. Pa. Feb. 3, 2016) ("The Landlord Tenant Act itself does not specifically identify college dormitories as included within its coverage and in fact it is unclear whether Pennsylvania's Landlord Tenant Act is applicable to dormitories") (citation omitted). Even if there was such a relationship, Pennsylvania courts have repeatedly held that a landlord is not responsible for protecting tenants from the criminal acts of third persons absent an agreement to do so. *Feld v. Merriam*, 506 Pa. 383, 391 (1984). Plaintiff points to no such agreement here.

---

voluntarily encounters a known or obvious danger, she is deemed to have agreed to accept the risk and the defendant is under no duty of care with respect to that risk as a matter of law. *See Ferencz v. Milie*, 535 A.2d 59 (Pa. 1987); *Herr v. Booten,* 580 A.2d 1115, 1120 (Pa. Super. Ct. 1990) (same, with assumption of risk abrogated even where defendant directly provided underaged person with alcohol). For the avoidance of doubt, Plaintiff does not allege Cummings was intoxicated or that alcohol consumption or intoxication contributed to his alleged conduct.

Along the same lines, to the extent Plaintiff may be suggesting, again unclearly, that she was harmed by "continued run-ins" with Cummings after the incident, FAC ¶¶ 123, or expressing disappointment regarding other aspects of the University's response, *id.* ¶¶ 119-120, Plaintiff does not actually allege any defect in Villanova's response to her report as part of her negligence claim (and indeed there was none) or raise a separate Title IX claim (as she could not).

Even in the event that there was an explicit undertaking to provide a "program of protection" to Plaintiff (which there was not),[14] a landlord is only required to exercise reasonable care under the circumstances and is not under a duty to "defeat all designs of felony." *Feld,* 506 Pa. at 394. Landlords are not the "insurers of their tenants' safety," as that is "a burden which could never be completely met given the unfortunate realities of modern society." *Id. See also James*, 936 F.Supp.2d (collecting cases and determining that university defendant owed no duty to student who was attacked on campus because the institution's "prior experiences with crime on campus did not give rise to a reasonable expectation that the type of harm that occurred would occur"). Importantly, here, the alleged assault did not even occur in Plaintiff's (or any other student's) dorm room, but rather in "the woods," "under the cover of the trees." FAC ¶¶ 105-106.

Moreover, "a tenant may not expect more than is offered." *Doe v. Moravian Coll.*, No. 5:20-CV-00377, 2023 WL 144436, at *12 (E.D. Pa. Jan. 10, 2023) (citation omitted) (plaintiff's claim failed because she did not "produce any evidence to establish what the standard campus security practices were" to show they had been breached). *See also Feld*, 506 Pa. at 394 ("If, for instance, one guard is offered, he cannot expect the same quality and type of protection that two guards would have provided"); *James,* 936 F. Supp. at 644-5 (limiting reliance to security that "routinely had been provided" and concluding plaintiff had improperly sought "to impose liability

---

[14] The types of measures Plaintiff asserts the University should have had in place are not in the character of a "program of protection," which typically pertain to security systems designed to exclude intruders with criminal intentions. *See, e.g., Johnson v. Goldstein*, 864 F. Supp. 490 (E.D. Pa. 1994) (after becoming aware of burglaries in the building in which perpetrators entered through windows, defendants voluntarily installed security bars on the windows of all apartments other than that of the plaintiff, who was then assaulted by an intruder); *Johnson v. OYR Realty Partners LP*, No. 14-CV-4630, 2015 WL 7733544 (E.D. Pa. Dec. 1, 2021) (after becoming aware of several criminal incidents in the rear parking lot, rear building doors were not monitored and security cameras were not repaired, after which time plaintiff was assaulted in the area in question); *Reider v. Martin*, 359 Pa. Super. 586, 592-593, 519 A.2d 510, 511 (1987) (landlords "had no preexisting duty to supply their tenants with a functional front door lock," but "assumed the duty" to do so, then failed to do so, after which plaintiff was raped, robbed, and beaten by an intruder).

based not on the negligent failure to act with due care with regard to the program of security that had been provided, but on expectations of more or better benefits"). In other words, even if Plaintiff has adequately pled that there was a program of security on which she reasonably relied, her FAC merely identifies other steps she believes the University *should* have undertaken, which cannot serve as a basis for liability as a matter of law. In short, Plaintiff has not plausibly pled a "special relationship" creating a duty based on a landlord-tenant relationship.

        2.      Villanova Was Not The Proximate or Legal Cause Of Plaintiff's Damages

Even if Plaintiff could show there was a duty which was breached, she has not alleged facts showing a "causal connection between the [alleged] breach of the duty and the resulting injury[,] and actual loss or damage suffered…." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281 (Pa. Super. Ct. 2005) (citations omitted). "Proximate cause is a question of law to be determined by the court before the issue of actual cause may be put to the jury." *Id*. (quoting *Reilly v. Tiergarten, Inc.*, 633 A.3d 208, 210 (Pa. Super. Ct. 1993)). "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Dudley v. USX Corp.*, 606 A.2d 916, 923 (Pa. Super. Ct. 1992) (citations omitted). A defendant does not bear legal responsibility where the causal chain of events resulting in the plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm. *Id.*, 606 A.2d at 923. The court "must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." *Reilly*, 633 A.3d at 210.

Plaintiff has not plausibly averred that the University's alleged actions or inactions were the legal cause of the harm that befell her. She makes no factual allegations whatsoever which link the University to the superseding intervening criminal act allegedly perpetrated by Cummings, which was the sole cause of Plaintiff's injuries. "A superseding cause is an act of a third person or

13

other force which, by its intervention, prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Von der Heide v. Com., Dep't of Transp.*, 18 A.2d 286, 288 (Pa. 1998) (quoting Restatement (Second) of Torts § 440 and citing *Trude v. Martin*, 660 A.2d 626, 632 (Pa. Super. Ct. 1995)). *See also Sullivan v. Warminster Tp.,* 765 F. Supp. 2d 687, 704 (E.D. Pa. 2011) (decedent's criminal acts were a "superseding cause that broke the chain of causation" between his death and the defendant's alleged negligence).

Put another way, even assuming, *arguendo*, that the University had some duty to prevent students from becoming intoxicated which it failed to satisfy, the Court cannot accept that being sexually assaulted is legally the "natural and probable outcome" of a student drinking alcohol. "Injury due to alcohol poisoning may have been reasonably foreseeable, [but] rape, and sexual assault are not. *Freeman v. Busch*, 150 F.Supp.2d 995, 1003-4 (S.D. Iowa Mar. 5, 2001) (even if defendant college breached a legal duty owed to known intoxicated plaintiff party guest, it was not liable for later sexual assault of plaintiff because those actions "were superseding causes relieving [it] of liability"). "The fact that two undergraduate students who were acquainted with one other were drinking at a party, one became intoxicated, and the other offered to walk her home is a routine and unexceptional occurrence on today's college campuses. The law cannot rationally be stretched so far as to impose liability on colleges to prevent all instances of this sort, merely in consideration of the possibility that one student may sexually assault another." *Roe v. Northeastern Univ.,* No. 16-03335-C, 2019 WL 1141291, *9-*10 (Sup. Ct. Mass. Mar. 8, 2019) (holding that the criminal acts of third parties, not any purported failures on the part of the University, were the proximate cause of the harm suffered by plaintiff). *See also Tanja H. v. Regents of Univ. of California*, 228 Cal. App. 3d 434, 438 (Cal. Ct. App. 1991), disapproved on other grounds by *Regents of Univ. of California v. Superior Court*, 413 P.3d 656 (Cal. 2018) (describing colleges as

"microcosms of society" and acknowledging that "unfortunately, sexually degrading conduct or violence in general—and violence against women in particular—are all too common within society at large," but holding that sexual assault committed after students consumed alcohol was not sufficiently foreseeable in the legal sense such that it gave rise to legal duty).

It is axiomatic that "Pennsylvania law regards those consequences as remote, and therefore, not actionable, which are produced by the intervention of human agency, or the voluntary act of such persons." *Leoni v. Reinhard,* 194 A. 490, 491 (Pa. 1937) (citation omitted). *See also Trude,* 660 A.2d at 627 (an intervening wrongful act becomes a superseding cause when, "looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable") (citation omitted). It is true that "[t]wo or more causes may contribute to and thus be the legal or proximate cause of an injury." *Feeney v. Disston Manor Personal Care Home, Inc*., 849 A.2d 590, 595 (Pa. Super. Ct. 2004). However, where there is a "superseding cause," it "prevents the [defendant] from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Von der Heide*, 718 A.2d at 288 (quoting Restatement (Second) of Torts § 440). This axiom makes particular sense when the intervening act was intentional (such as the alleged criminal act of Cummings) and takes place outside the scope of any alleged antecedent negligence (such as a third party committing sexual assault after the victim's voluntary consumption of alcohol went undetected). *See* Restatement (Second) of Torts § 442B ("Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, **except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct**") (emphasis added).

15

While the University empathizes with the harm alleged by Plaintiff, it would be bad public policy to hold educational institutions responsible for any harm their students suffer, no matter how far removed from the University's own actions. "Courts across the country have determined ... that the general foreseeability of sexual assault on campus is insufficient to warrant negligence liability." *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 619 (W.D. Tex. 2017) (sexual assault foreseeable where prior allegations against alleged offender were known to defendant institution).

With respect to "sylly week" in particular:

- Plaintiff asserts that the University failed to warn students "about illicit activities associated with 'sylly week.'" FAC ¶ 138 (d, j, n). But, Plaintiff voluntarily entered The Courts, "observed multiple students imbibing limitless supplies of alcoholic beverages," and chose to imbibe. *Id.* ¶¶ 83-85. Regardless of the University's alleged failure to warn, Plaintiff saw with her own eyes "illicit activities" and decided to participate, suggesting that a warning from the University of what she *might* encounter would have been of no effect.

- Plaintiff asserts that the University failed to provide "security," "enforcement of Commonwealth laws and Villanova rules and codes of conduct," or "supervision" at The Courts during "sylly week." *Id.* ¶¶ 138 (f-g). But, leaving aside the fact that the University had no authority over The Courts whatsoever and Plaintiff does not plausibly plead otherwise, Plaintiff was not injured at The Courts. Even assuming, *arguendo*, that Plaintiff had been unable to procure alcoholic beverages at The Courts, it does not follow that Plaintiff would not have encountered harm from Cummings, or would not have sought to drink alcohol at any number of other locations.

- Plaintiff asserts that the University failed to adequately detect intoxicated students during "sylly week." *Id.* ¶ 138 (h-i, k). But, Plaintiff does not allege that she encountered any University personnel upon her return, was visibly intoxicated upon her return, or was otherwise apparently unwell – particularly given that she was accompanied all evening by three female friends, then her roommate and unspecified "other friends," all of whom apparently saw no reason to object to Plaintiff remaining outside with Cummings and continuing to drink alcohol after they went home.

To summarize, even if the University had done everything Plaintiff asserts it should have, there is no reason to believe Plaintiff would have been spared the harm which occurred. The simple fact is that it was solely the alleged criminal acts of Cummings – who is not even named as a defendant in this action – that caused Plaintiff's damages. "[I]n the absence of any allegation in the complaint that [the alleged offender] had previously committed any sexual assault, it is unclear

what steps the college could have taken to protect [plaintiff] from attack." *Facchetti v. Bridgewater Coll.,* 175 F.Supp.3d 627, 643-4 (W.D. Va. 2016) ("level of foreseeability of harm" necessary for a viable premises-liability claim not met where five assaults occurred in defendant college's dormitories the year prior, as none were alleged to have been perpetrated by plaintiff's alleged assailant); *see also Murrell v. Mount St. Clare Coll.*, No. 3:00-CV-90204, 2001 WL 1678766, *4 (S.D. Iowa Sept. 10, 2001) ("A college, or any other kind of landlord, is incapable of foreseeing an acquaintance rape that takes place in the private quarters of a student or tenant, unless a specific student or tenant has a past history of such crimes").

The law "does not impose a legal duty on colleges or administrators to supervise the social activities of adult students, even though the college may have its own policies prohibiting alcohol or drug abuse." *Doherty v. Emerson Coll.*, No. 1:14-CV-13281-LTS, 2017 WL 4364406, *10 (Sept. 29, 2017) (plaintiff could not prove defendant college was the proximate cause of the sexual assault perpetrated against her by another student, even though Massachusetts law, unlike Pennsylvania law, imposes a duty on colleges "to protect their resident students against the criminal acts of third parties"). "College students are generally young adults who do not always have a mature understanding of their own limitations or the dangers posed by alcohol and violence. However, the courts have not been willing to require college administrators to reinstitute curfews, bed checks, dormitory searches, hall monitors, chaperons, and the other concomitant measures which would be necessary in order to suppress the use of intoxicants and protect students from each other." *Tanja H.*, 228 Cal. App. 3d at 438.

B.    <u>Plaintiff Fails To State A Claim For NIED Against The University (Count II) Because Plaintiff Has Not Adequately Stated An Underlying Claim Of Negligence, And Her Accompanying Demand for Punitive Damages Must Fail.</u>

Plaintiff's NIED claim should be dismissed because she has failed to plausibly state an underlying claim of negligence. In Pennsylvania, "[t]he crux of a [NIED] claim is that [defendants] breached some duty they owed to [plaintiff] and that the breach injured [her]." *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 578 (Pa. Super. Ct. 1999). Thus, to succeed on a NIED claim, a plaintiff must establish a prima facie case of negligence. *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000) ("[A]bsent a finding of negligence, the [NIED] claim cannot survive"). Here, as addressed in detail in Section A(1), Villanova had no duty to Plaintiff and did not cause Plaintiff's damages. *See MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 594 (W.D. Pa. 2019) ("Pennsylvania courts would not extend liability for [NIED] to a case involving a relationship between a school and its student"); *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) (dismissing student's NIED claim against college due to lack of special relationship).

Plaintiff's NIED claim hinges on the allegation that the University's actions or inactions created a risk of "foreseeable emotional harm so extreme that a reasonable person…should not be expected to endure the resulting distress" and that "[a]s a direct and proximate result of the negligent and reckless conduct of Villanova," Plaintiff "was raped by another Villanova student and suffered severe emotional distress." FAC ¶¶ 147-148. The alleged "actions or inactions" to which Plaintiff cites, however, are things such as failing to warn students of obvious dangers such as the risks associated with underage drinking, *id.* ¶ 138 (a-e, j, n); assert responsibility for the security of off-campus premises over which it has no authority, *id.* ¶ 138 (f-g); and detect intoxicated students. *Id.* ¶ 138 (h-i, k-m, o). "Pennsylvania addresses NIED claims in terms of foreseeability." *MDB*, 386 F. Supp. 3d at 592 (citing *Turner v. Med. Ctr.*, 686 A.2d 830, 832 (Pa. Super. Ct. 1996). "The determination of liability depends on 'whether the emotional injuries

sustained by the plaintiff were reasonably foreseeable to the defendant.'" *Id.* (quoting *Sinn v. Burd*, 404 A.2d 672, 684 (Pa. 1979). As discussed in detail in Section A(2), above, the Court cannot accept that being sexually assaulted is the "natural and probable outcome" of drinking alcohol.

Because she has failed to adequately plead an underlying negligence claim, Plaintiff "cannot successfully assert a claim for negligent infliction of emotional distress," and the NIED claim should be dismissed. *J.E.J. v. Tri-County Big Brothers/Big Sisters, Inc.*, 692 A.2d 582, 586 n.4 (Pa. Super. Ct. 1997). And, for the avoidance of doubt, Plaintiff's demand for punitive damages, brought solely in connection with Count II, must accordingly fail. FAC ⁋ 149.[15]

C.     The FAC Should Be Dismissed With Prejudice Because Amendment Would Be Futile.

Plaintiff's FAC should be dismissed with prejudice because an additional amendment would be futile. *See In re New Jersey Title Ins. Litig.*, 683 F.3d at 462; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (court must permit curative amendment, unless amendment would be inequitable or futile). The fundamental flaw undergirding Plaintiff's negligence and

---

[15] Plaintiff's demand for punitive damages must fail because the underlying claim fails. However, Plaintiff's claim for punitive damages also fails because Plaintiff has inadequately stated a claim for same. "To state a claim for punitive damages, the plaintiff must plead specific facts demonstrating outrageous and/or willful conduct….The mere assertion of a claim for punitive damages is insufficient as a matter of law." *Pietrulewicz v. Gil*, No. 2014-C-0826, 2014 WL 11226404, at *2 (Pa. Ct. Com. Pl. June 6, 2014) (quotations and citations omitted); *see also Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1263 (Pa. Super. Ct. 1983) (punitive damages are "awarded against a person to punish him for outrageous conduct"). Allegations of "ordinary negligence, inadvertence, mistake, or errors of judgment" will not suffice. *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985).

Rather, conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society[.]" *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998) (citation and quotation omitted). Only cases asserting "the most egregious conduct" imaginable in society meet the "extreme and outrageous" standard. *See Papieves v. Lawrence*, 263 A.2d 118, 121-22 (Pa. 1970) (defendant killed plaintiff's son with car, failed to notify authorities, and buried body in field); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1239 (Pa. Super. Ct. 1981) (homicide indictment resulted from fabricated medical records suggesting plaintiff had killed third-party). A court must determine whether alleged conduct, as pled, rises to the level of "extreme and outrageous" as a threshold issue. *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005). Because Plaintiff has failed to allege "extreme and outrageous" conduct by Villanova, she is unable to recover punitive damages.

NIED claims is that the University owed Plaintiff no duty of care. "Duty is a legal question, rather than a factual one." *See Hall v. U.S.,* No. 2:19-cv-05256, 2020 WL 3265146, *3 (E.D. Pa. June 17, 2020) (citing *R.W. v. Manzek,* 888 A.2d 740, 746 (Pa. 2005) for the proposition that "duty is a question of law for the court to decide"). As such, "while the Court must accept all factual allegations in [Plaintiff's] complaint as true, the Court need not accept any conclusions in the complaint regarding the purported duty the [Defendant] owed to [Plaintiff]." *Hall,* 2020 WL at *3.

Similar to the plaintiff in *Hall,* Plaintiff's "argument that a duty of care should exist under the facts of this case has been repeatedly rejected by Pennsylvania courts." *Id.* at *5. There simply is no generalized duty to ensure the safety of a student, invitee, or tenant under Pennsylvania law. This is "a legal deficiency, rather than a factual efficiency, so an amendment to [the] negligence claim would be futile." *Id.* at *5 n. 8 (citing *Neave v. Hershey Co.,* No. 1:19-CV-776, 2019 WL 2577304, at *1 (M.D. Pa. June 24, 2019) for the proposition that "leave to amend would be futile and cause undue delay because [the plaintiff's] complaint is legally rather than factually deficient and thus incurable"). *See also Mohn v. U.S.*, No. 23-2653, 2023 WL 8458243, *2 (E.D. Pa. Dec. 6, 2023) (negligence claim dismissed with prejudice because plaintiff could not establish defendant had "a duty to him as a borrower" and as such could not it "breached a duty to him and amendment would be futile"); *Smith v. Lincoln Ben. Life Co.,* 395 F.App'x 821, 824 (3d Cir. Sept. 24, 2010) (dismissal with prejudice appropriate where "Claimant could not demonstrate how amended complaint would allege new facts or legal arguments to support recovery").

Plaintiff has already filed one amended complaint and failed to remedy the legal defects. Plaintiff is obviously unable to assert any facts which will enable her to state a claim upon which relief can be granted. As such, dismissal of the First Amended Complaint should be with prejudice.

**<u>CONCLUSION</u>**

For the reasons set forth herein, Plaintiff's First Amended Complaint should be dismissed in its entirety against Villanova, with prejudice, for failure to state a claim pursuant to Rule 12(b)(6), along with any other, further relief the Court deems proper, equitable, and just.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Defendant Villanova*
*University*

Dated: September 4, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, James A. Keller, hereby certify that I electronically filed the foregoing Motion to Dismiss and Memorandum of Law with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Defendant Villanova University*

Dated:  September 4, 2025

22

## CERTIFICATE OF CONFERENCE WITH PLAINTIFF'S COUNSEL

I, James A. Keller, hereby certify that on August 29, 2025, I engaged in substantive verbal communication with Plaintiff's counsel regarding the substance of this Motion. Plaintiff has not, to-date, taken advantage of the opportunity to cure the alleged pleading deficiencies.

Respectfully submitted,

*/s/ James A. Keller*
James A. Keller (PA 78955)
Jesse L. Krohn (PA 313059)
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-1964//7869
James.Keller@saul.com
Jesse.Krohn@saul.com

*Attorneys for Villanova University*

Dated:  September 4, 2025

23