**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE, | : | CIVIL ACTION |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | NO. 25-3350 |
| VILLANOVA UNIVERSITY; COLLEGE | : | |
| HALL ASSOCIATES, L.P., d/b/a | : | |
| COLLEGE   HALL APARTMENTS, a/k/a | : | |
| "THE COURTS"; and MARKS & | : | |
| COMPANY USA, INC., d/b/a  MARKS & | : | |
| COMPANY, | : | |
| | : | |
| *Defendants*. | : | |

Perez, J.                                                                                                      May 4, 2026

**<u>MEMORANDUM</u>**

This case arises from the sexual assault of Plaintiff Jane Doe by another Villanova University student after she returned to the school's campus from an off-campus party in August 2023. Doe brings negligence and negligent infliction of emotional distress ("NIED") claims against Villanova University ("Villanova") and against College Hall Associates, L.P., College Hall G.P., and Marks & Company USA, Inc. (the "College Hall Defendants"), the owners and manager of the off-campus apartment complex where the party occurred. Before the Court are Villanova's Motion to Dismiss and the College Hall Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Villanova's motion is denied, and the College Hall Defendants' motion is granted.

I.      **FACTUAL BACKGROUND**[1]

Villanova is a private university with its principal campus in Villanova, Pennsylvania. *Id*. ¶ 8. Plaintiff Jane Doe was an incoming freshman at Villanova in August 2023 and lived in Stanford Hall, a dormitory on Villanova's campus. ECF No. 19 ¶¶ 20–22. This case arises from Doe's alleged sexual assault after she returned to Villanova's campus from an off-campus party at College Hall Apartments. *Id*. ¶¶ 39, 93–108.

College Hall Apartments, better known to Villanova students as "The Courts," is an off-campus apartment complex in Ardmore, Pennsylvania. *Id.* ¶¶ 9–14, 48. College Hall Associates, L.P. and College Hall G.P. owned the property, and Marks & Company USA, Inc. managed it. *Id.* ¶¶ 9–14. Although unaffiliated with Villanova, The Courts housed more than 100 Villanova students each year and, according to the Amended Complaint, had become a familiar gathering place for Villanova student activity. *Id.* ¶¶ 48–50.

That activity had also drawn attention from the surrounding community. Doe describes The Courts as a long-standing source of complaints to Lower Merion Township, the Lower Merion Police Department, and Villanova. *Id.* ¶¶ 49–51. She points to a February 2024 article in Villanova's student newspaper *The Villanovan*, which reported that College Hall housed more than 100 Villanova students and had become the subject of efforts by both Lower Merion police and Villanova to address resident behavior. *Id.* ¶¶ 44–46. The article quoted a Lower Merion police official describing College Hall as "its own animal" and "an echo chamber," and reported that

---

[1] For purposes of these motions, the Court accepts the well-pleaded facts in the First Amended Complaint (ECF No. 19) as true.

community complaint calls concerning College Hall rose from three in the first two weeks of Fall 2022 to ten in the first two weeks of Fall 2023. *Id.* ¶ 46.

The public records tell a similar story. Doe relies on materials obtained through Pennsylvania Right-to-Know Law requests showing that, between March 6, 2021 and March 6, 2024, The Courts generated 184 calls for service, approximately 164 of them for police assistance. *Id.* ¶ 52. Those calls ranged from noise complaints, suspicious activity, directed patrols, foot patrols, and disturbances, to burglaries, fire alarms, people passing out, unknown medical emergencies, overdoses, and head injuries. *Id.* The Right-to-Know materials also reflect ongoing communications among Lower Merion Township personnel, police officers, Marks representatives, and Villanova representatives about citations, inspections, fines, court proceedings, and meetings involving Marks, Villanova, and Villanova students. *Id.* ¶¶ 53–58.

The first week of classes at Villanova is known among students as "Sylly Week," a period when professors review course syllabi and students have comparatively lighter academic obligations. *Id.* ¶ 35. During that period, Villanova conducts beginning-of-year programming, including freshman orientation, where Doe participated in a breakfast breakout group led by Villanova sophomore Billy O'Connor. *Id.* ¶¶ 27–32. O'Connor told the group, "I'm not supposed to say this" and "[i]f you go to The Courts, don't drink the 'jungle juice,'" which was Doe's first introduction to The Courts. *Id.* ¶¶ 32–33. The evening of the first day of classes is known as "Sylly Night," when Villanova students, including those under 21, attend on and off-campus parties and consume alcohol served by other students. *Id.* ¶¶ 35–38. The Courts is one of the popular destinations for those parties. *Id.*

On the evening of August 25, 2023, Doe went to The Courts for a Sylly Week party. She was under 21. *Id.* ¶¶ 39–40, 74. By the time she arrived, hundreds of Villanova students had

gathered inside and outside the apartment complex, moving through hallways and between apartments where liquor and beer were visible. *Id.* ¶¶ 74–84. No formal security or active police presence monitored the scene, and entry into the building and apartments was controlled by individuals believed to be Villanova fraternity members. *Id.* ¶¶ 77–80. Doe was not asked for identification and became highly intoxicated after being served alcohol in at least one apartment. *Id.* ¶¶ 41, 85–90.

Around midnight, Doe and three acquaintances left The Courts by rideshare and returned to Villanova's campus. *Id.* ¶ 93. Doe went first to Stanford Hall, then joined her roommate and other students on benches in the quad outside the dormitory, where the group continued drinking. *Id.* ¶¶ 94–95. Other Villanova students were openly drinking there, too, including Colin Cummings. *Id.* ¶ 96. No police officers, campus security officers, resident assistants, or Villanova staff were nearby, and public underage drinking allegedly went unchecked. *Id.* ¶¶ 97–101. As the morning wore on, most students returned inside, but Doe and Cummings remained outside and continued drinking until Doe became so intoxicated that she blacked out. *Id.* ¶¶ 102–04.

Cummings then took Doe to nearby woods, where he raped and/or sexually assaulted her. *Id.* ¶¶ 105–06. Because of her intoxication, Doe was incapable of knowingly or voluntarily consenting to sexual acts. *Id.* ¶¶ 107–08. Doe did not realize Cummings had sex with her until later that day, when she woke up in her room without her underwear. *Id.* ¶ 113.

The events surrounding Doe's assault unfolded against a broader pattern of campus safety concerns. Villanova's own 2023 Annual Security and Fire Safety Report identified campus incidents of rape, fondling, stalking, dating violence, liquor law referrals, and drug possessions for 2020, 2021, and 2022. *Id.* ¶ 43. Against that backdrop, Doe maintains that Villanova knew, or should have known, that the beginning of the academic year brought heightened risks of alcohol-

related misconduct and sexual assault—particularly as students attended Sylly Week parties at The Courts and returned intoxicated to campus housing. *Id.* ¶¶ 4–5, 35–43, 92.

**II. Arguments of the Parties**

Doe brings negligence and NIED claims against Villanova and the College Hall Defendants. As to Villanova, Doe contends that the University owed her a duty of reasonable care because it controlled the residential campus where the alleged assault occurred, knew of recurring alcohol-related and sexual misconduct risks at the beginning of the academic year, and undertook campus safety, residential life, alcohol policy, and student disciplinary functions. She claims Villanova breached that duty by failing to warn students about Sylly Week, The Courts, underage drinking, and sexual misconduct; failing to provide adequate supervision near freshman housing; failing to monitor visibly intoxicated students returning to or gathering near dormitories; and failing to implement reasonable protective measures through resident assistants, public safety, and student life personnel.

Doe's claims against the College Hall defendants rest on their ownership and management of The Courts. She contends they knew The Courts was a recurring location for Villanova student parties involving underage drinking, particularly during Sylly Week, but failed to provide security, monitor the premises, prevent alcohol from being furnished to minors, warn guests, or protect intoxicated visitors from foreseeable harm.

Both sets of defendants move to dismiss. Villanova argues that Pennsylvania law does not impose a generalized duty on universities to protect adult students from third-party criminal acts, that Villanova did not own or control The Courts, that Doe does not allege Villanova knew the alleged assailant posed a specific risk, and that the causal chain between Villanova's alleged

omissions and Doe's injuries is too attenuated. The College Hall defendants similarly argue that they did not furnish alcohol to Doe, had no duty to police tenant-hosted underage drinking, and cannot be the proximate cause of an assault that occurred only after Doe left The Courts, returned to Villanova's campus, continued drinking there, and encountered the alleged assailant.

## I.       LEGAL STANDARD

A defendant may move to dismiss a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a Rule 12(b)(6) motion to dismiss, this Court accepts Plaintiff's allegations in her Complaint as true and makes reasonable inferences based on the facts, in the light most favorable to Plaintiff. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). This Court need not accept legal conclusions and conclusory statements in the Complaint. *Id.*

## II.      LEGAL ANALYSIS

The events giving rise to this case began at an off-campus apartment complex, but the sexual assault occurred after Plaintiff Jane Doe returned to Villanova University's campus. That distinction drives the outcome here. For the reasons that follow, Villanova's motion to dismiss Counts I and II is denied, and the College Hall Defendants' motion to dismiss Counts III and IV is granted.

### A. Villanova

#### 1. Negligence

To survive a motion to dismiss a negligence claim under Pennsylvania law, a plaintiff must adequately plead duty, breach, causation, and damages. *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 602 Pa. 346, 354 (2009). Villanova challenges both duty and causation. ECF No. 20.

Doe has pleaded enough to proceed against Villanova. The First Amended Complaint asserts that Villanova owed Doe a duty to provide a reasonably safe educational and residential environment, to protect students from foreseeable risks of harm, and to implement reasonable campus safety measures during a known high-risk period at the beginning of the academic year. ECF No. 19 ¶¶ 124–31. Duty is ordinarily a question of law, but it turns here on Villanova's relationship to Doe and its alleged knowledge of the risk created by heavy student drinking and sexual misconduct during the first week of classes. "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time." *T.A. v. Allen*, 669 A.2d 360, 362 (Pa. Super. Ct. 1995).

Doe advances several duty theories, but her claim survives on the narrower ground that Villanova *possessed and operated* the residential campus where the alleged assault occurred. A possessor of land may owe a duty to an invitee where the possessor has actual or constructive knowledge of dangerous conditions or foreseeable third-party misconduct. Restatement (Second) of Torts § 343; *Estate of Swift v. Ne. Hosp. of Philadelphia*, 690 A.2d 719, 722–23 (Pa. Super. Ct. 1997). Doe was a Villanova freshman living in Stanford Hall, and the alleged assault occurred only after she returned to Villanova's campus, continued drinking outside Stanford Hall, and was taken to nearby woods by another Villanova student. ECF No. 19 ¶¶ 20–22, 93–108. Unlike the

allegations concerning The Courts, the allegations concerning Villanova are tied to property under Villanova's control.

The First Amended Complaint also contains enough factual detail to make Villanova's constructive knowledge plausible. Villanova's own 2023 Annual Security and Fire Safety Report recorded prior campus incidents of rape, fondling, stalking, dating violence, liquor-law referrals, and drug cases. *Id.* ¶ 43. Doe also ties those general campus safety concerns to the specific circumstances of this case: the first week of classes, when underage drinking and sexual-misconduct risks allegedly increase; "Sylly Night," when students attend on and off-campus parties and drink alcohol served by other students; and The Courts, a known gathering place for Villanova students during that period. *Id.* ¶¶ 35–38, 43, 92. The alleged history of complaints, emergency calls, and communications among Lower Merion Township, Marks, Villanova, and law enforcement about student misconduct at The Courts reinforces the inference that Villanova knew intoxicated students would predictably return from The Courts to campus housing. *Id.* ¶¶ 44–58.

These allegations do not establish that Villanova is a guarantor of student safety, nor do they create a general duty to supervise all adult student conduct. Pennsylvania law does not impose such a broad university-student duty. *Bradshaw v. Rawlings*, 612 F.2d 135, 140–41 (3d Cir. 1979); *Alumni Ass'n v. Sullivan*, 524 Pa. 356, 364 (1990). The duty alleged here is narrower. Doe claims Villanova knew intoxicated students would predictably return to its residential halls during the first week of classes and that the University failed to take reasonable precautions where it had control: on campus, near freshman housing. ECF No. 19 ¶¶ 95–104, 124–42. That duty does not reach The Courts itself, an unaffiliated off-campus apartment complex, nor does it require Villanova to prevent every downstream consequence of underage drinking away from campus. It extends only to reasonable precautions Villanova could have taken on property it controlled, even if the need

for those precautions was informed by known student activity at The Courts. Discovery may show that Villanova lacked sufficient notice or acted reasonably, but at this stage Doe has plausibly alleged duty and breach.

Doe has also adequately pleaded proximate cause. Proximate cause requires a causal connection between the breach and the harm such that the increased risk was a substantial factor in bringing about the injury. *Scampone v. Highland Park Care Ctr., LLC*, 618 Pa. 363, 387 (2012). Courts use proximate cause to draw a line when an alleged injury is too remote from the challenged conduct. *Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 758 (E.D. Pa. 2016). An intervening criminal act may sever the chain of causation, but not where the defendant's alleged negligence increased the risk of the very harm that occurred. Restatement (Second) of Torts § 442B; *Abdallah v. Caribbean Sec. Agency*, 557 F.2d 61, 63 (3d Cir. 1977).

Cummings's sexual assault of Doe was an intentional criminal act, but it was not unrelated to the risk Doe says Villanova failed to address. Doe's theory is that Villanova knew the first week of classes would bring intoxicated students back to freshman housing and failed to provide reasonable warnings, monitoring, or heightened protections on its residential campus. ECF No. 19 ¶¶ 95–108, 132–42. The pleaded sequence keeps the causal chain on campus: Doe returned to Villanova, went to Stanford Hall, continued drinking outside the dormitory, remained there with another Villanova student after others went inside, blacked out, and was assaulted nearby. *Id.* ¶¶ 93–108. Given Villanova's alleged knowledge of start-of-semester drinking and sexual misconduct risks, those facts support a reasonable inference that its omissions contributed to the conditions that allowed the assault to occur.

Therefore, Villanova's motion to dismiss Count I is denied.

### 2. Negligent Infliction of Emotional Distress

Doe's NIED claim against Villanova rises or falls with her negligence claim. NIED is predicated on an underlying negligence claim. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000). Because Doe has plausibly pleaded negligence against Villanova, the NIED claim may proceed at this stage. Villanova argues that the NIED claim fails because Doe has not stated a viable negligence claim. ECF No. 20. That argument fails for the reasons already discussed. The Court need not decide at this stage the precise boundaries of Doe's NIED theory, including whether the claim fits within a special relationship, impact, or zone-of-danger theory. Those issues are better resolved on a developed record. For now, Doe has alleged that Villanova owed her a duty, breached that duty, and caused severe emotional distress arising from a sexual assault on or near its residential campus. ECF No. 19 ¶¶ 143–50.

Villanova's motion to dismiss Count II is therefore denied.

### B. The College Hall Defendants

Doe also brings negligence and NIED claims against College Hall Associates, L.P., College Hall G.P., and Marks & Company USA, Inc., the owners and manager of The Courts. ECF No. 19 ¶¶ 151–88. These claims all fail at the duty stage.

Doe's duty theory against the College Hall Defendants rests on the premise that she entered The Courts as an *invitee or business visitor* and that Defendants knew the property was a recurring site of Villanova student parties involving underage drinking. *Id.* ¶¶ 151–76. However, that theory stretches the premises liability doctrine beyond what the alleged relationship between Doe and the College Hall Defendants supports. The Courts may well have been popular with Villanova students, yet it remained a private, off-campus residential apartment complex owned and managed

by the College Hall Defendants—not a public venue or commercial establishment held open to student partygoers. *Id.* ¶¶ 9–14, 48. "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Updyke v. BP Oil Co.*, 717 A.2d 546, 549 (Pa. Super. Ct. 1998). A business visitor is one invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor. Restatement (Second) of Torts § 332.

The allegations do not plausibly make Doe a public invitee or business visitor of the College Hall Defendants. Doe went to The Courts to attend a student party. ECF No. 19 ¶¶ 39–41, 74–90. She did not enter for business dealings with the owners or manager, and the apartment complex was not open to the public merely because students allegedly moved between apartments during Sylly Week. Pennsylvania law treats apartment buildings differently from public commercial establishments. *Feld v. Merriam*, 506 Pa. 383, 391 (1984) ("An apartment building is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create."). At most, the facts suggest that Doe was a guest or licensee of tenants hosting or attending the party.

Doe's landlord theory fares no better. Pennsylvania law recognizes that a landlord who undertakes a security program may, in some circumstances, be liable to tenants if the program is performed negligently. *Feld*, 506 Pa. at 393–94; *Doe v. Moravian Coll.*, No. 5:20-cv-00377, 2023 WL 144436, at *11 (E.D. Pa. Jan. 10, 2023). Doe was not a tenant at The Courts. Nor does the First Amended Complaint plead that the College Hall Defendants undertook a security program for her benefit. ECF No. 19 ¶¶ 151–88. The allegation that there was no formal security or active police presence at The Courts does not create a duty to provide one. *Id.* ¶¶ 77–78.

11

The underage drinking allegations do not change the duty analysis. Pennsylvania law does not make landlords responsible for policing their tenants' lawful or unlawful conduct. *Kapres v. Heller*, 612 A.2d 987, 992 (Pa. Super. Ct. 1992), *aff'd*, 536 Pa. 551 (1994). Where the alleged harm flows from alcohol furnished to a minor, liability requires facts showing that the defendant knowingly furnished or supplied the alcohol. *Alumni Ass'n*, 524 Pa. at 364; *Kapres*, 612 A.2d at 991–92. Doe pleads that unidentified individuals inside at least one apartment served her alcohol, that she was not asked for identification, and that she did not pay for the alcohol. ECF No. 19 ¶¶ 41, 85–90. She does not plead that the College Hall Defendants purchased, supplied, served, or charged for it. At most, the Complaint alleges that the College Hall Defendants knew students drank at tenant-hosted parties. That is not the same as knowingly furnishing alcohol to a minor.

The recent decision in *C.A. v. Villanova University*, 2025 WL 2599530 (E.D. Pa. Sept. 8, 2025), is directly on point. There, another Villanova student sued Villanova and the same College Hall/Marks defendants after drinking at The Courts on Sylly Night, returning to Villanova's campus, drinking more alcohol, and being sexually assaulted in a dormitory. *Id.* at *1–2. The court dismissed the claims against The Courts, holding that the plaintiff was not a public or business invitee, that The Courts was a private residential building, that the plaintiff was not a tenant owed a landlord security-program duty, and that no duty arose merely because underage drinking occurred absent allegations that The Courts knowingly furnished alcohol. *Id.* at *5–6. The same reasoning applies here.

The causation allegations against the College Hall Defendants are also too attenuated. Doe left The Courts in a rideshare, returned to Villanova's campus, went to Stanford Hall, continued drinking outside the dormitory, remained outside with Cummings after others left, blacked out, and was assaulted in nearby woods. ECF No. 19 ¶¶ 93–108. Those intervening events separate the

College Hall Defendants' alleged failure to monitor tenant-hosted drinking from the later assault on Villanova's campus. The law does not impose liability on these off-campus property owners and manager for a later criminal assault committed elsewhere by another Villanova student under these facts.

Because the College Hall Defendants owed no actionable duty to Doe, Count III fails. The NIED claim against them fails as well because there is no predicate negligence claim. *Brezenski*, 755 A.2d at 45. The College Hall Defendants' motion to dismiss Counts III and IV is granted.

## III.    CONCLUSION

This case presents two very different theories of premises liability. Villanova controlled the residential campus where Doe returned, continued drinking, blacked out, and was allegedly assaulted. At this stage, Doe has pleaded enough to proceed on the theory that Villanova knew of heightened risks of beginning-of-year alcohol and sexual misconduct and failed to take reasonable on-campus precautions near freshman housing.

The College Hall Defendants stand in a different position. The Courts was the site of the off-campus party, but it was not the site of the alleged assault. Doe does not plead that the College Hall Defendants furnished alcohol, planned the party, undertook a security program for her benefit, or controlled the later events on Villanova's campus. Pennsylvania law does not extend landlord liability that far.

Accordingly, Villanova's Motion to Dismiss Counts I and II is denied. The College Hall Defendants' Motion to Dismiss Counts III and IV is granted. A corresponding order follows.